[No. A033441. First Dist., Div. Two. Aug. 15, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.

DANIEL T. LUCERO, Defendant and Appellant.

COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Gloria F. DeHart, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.**—On September 19, 1985, appellant Daniel Lucero was found guilty of conspiring to smuggle narcotics into a county jail facility (Pen. Code, §§ 182, 4573), transporting a controlled substance (Health & Saf. Code, § 11352), and extortion (Pen. Code, § 520). Appellant alleges the convictions must be reversed because the trial court refused to instruct on his mistake of fact defense. We agree.[1]

FACTS

In the evening hours of January 11, 1985, appellant visited a friend, Michael Cummer. Appellant left Cummer's home to purchase drugs. He bought some cocaine, then sold a portion to, and was arrested by, Al Delacerda, an undercover officer with the San Francisco Police Department. From jail he telephoned Cummer to advise him that he was in custody and had left Cummer's car on the street. The following day Cummer went to see appellant in jail to learn where appellant had left his car, which he claimed was taken without permission. Appellant said he was unaware of

---

[1] Since we are reversing the convictions for failure to instruct on appellant's defense, we do not reach the prosecutorial misconduct claim and sentencing error alleged by appellant.

the exact location and suspected that a friend who was with him at the time of his arrest might have it.

The day after his arrest appellant was also visited by Officer Delacerda. Appellant told Delacerda he was willing to act as an informant in exchange for leniency on the charges facing him. At the time of his arrest, appellant was on formal probation and other charges were pending against him. Delacerda told appellant he wanted information leading to arrests involving narcotics, and that the general police policy was to require evidence leading to three arrests as a condition of assistance.

Appellant testified that he and Delacerda maintained almost daily contact for several weeks. As a result of information relayed, and telephonic arrangements set up by appellant, two persons were arrested for the sale of a controlled substance; one on January 15, 1985, and another on January 31, 1985. Both arrests resulted in convictions. In return for the information, Officer Delacerda wrote a letter to the district attorney's office on appellant's behalf. The letter, dated February 4, 1985, related that appellant had provided information resulting in two felony arrests, that Delacerda wanted appellant to continue working with him, and that he hoped appellant's work would be taken into consideration by the district attorney. Although Delacerda wanted more information from appellant, they had made no further arrangements. Appellant testified that he believed Delacerda expected information resulting in at least one more arrest in order to meet the condition that he provide evidence leading to at least three arrests.

While in custody appellant learned that a person employed at the jail was willing to smuggle drugs into the facility. He thought this would be an important case, and that he would obtain Delacerda's help if he could put it together. Appellant testified that he informed Officer Delacerda of his idea and Delacerda told him it would be a good case, and to inform him when it was worked out. Delacerda admitted appellant mentioned the idea, but claimed he referred appellant to the sheriffs responsible for running the county jail.

Meanwhile, Michael Cummer had notified the police that appellant had stolen his car. Cummer testified that appellant would call him demanding money or drugs in exchange for the return of his car. Appellant testified that he did not know the location of Cummer's car, but that Cummer had offered him a reward to find it, and he was calling friends and relatives in order to do so.

On February 7, 1985, appellant spoke with a Northern California Service League volunteer, Donna Marcinowsky, who had a pass to enter the jail

facility. According to appellant, she agreed to bring him contraband in exchange for some marijuana. Appellant telephoned Cummer and asked him to provide Marcinowsky the contraband; in return he promised to reveal the location of Cummer's car.

Cummer testified that he informed San Francisco Police Officer Kemmitt that appellant wanted him to assist in bringing drugs into the jail. On February 8, 1985, Officer Kemmitt accompanied Cummer to the Oakland location specified by appellant, where he purchased heroin and marijuana. They then delivered the contraband to Donna Marcinowsky at the Hall of Justice. She was arrested while heading for the jail elevator.

Appellant testified that he tried to reach Delacerda all day on February 8, 1985, to notify him that he had arranged for a third arrest. Delacerda was testifying in the Hall of Justice in an unrelated matter that day, and was not expected at the station until 7 p.m. Appellant claimed to have left several messages at the police department. Appellant explained that it was difficult to get in touch with Delacerda because he could not receive calls while in jail. Appellant also stated that he could not leave specific messages at the police department because other inmates would have overheard him and that he would be in great danger if they discovered he was an informant.

At approximately 5 p.m. on February 8, appellant was arrested at a jail telephone; he testified he was at that very moment still trying to contact Delacerda.

## DISCUSSION

Appellant's defense to the charges was that he held an honest and reasonable belief that he was immune from prosecution because his actions were in furtherance of his work with officer Delacerda. He relies upon Health and Safety Code section 11367, which provides: "All duly authorized peace officers, while investigating violations of this division in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division."[2]

The trial court denied appellant's request for the following jury instruction: "The prosecution has the burden of proof beyond a reasonable doubt as to the element of intent for every allegation in the information. When a mistake of fact disproves any criminal intent which is a requisite element of any crime, the mistake is a defense to the crime. [¶] When a person commits

---

[2] Further statutory references will be to the Health and Safety Code unless otherwise noted.

an act based on a mistake of fact, his guilt or innocence is determined as if the facts were as he perceived them. [¶] Thus a person is not guilty of a crime if he commits an act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act lawful. [¶] Thus if you find that the defendant had an honest mistake of fact with regard to his acting and working for Officer [Delacerda] as a credible reliable informant, and that such mistake of fact negated the required intent under my instructions, you must find him not guilty of any allegation where such intent has been negated."

The question before us is, in effect, whether appellant's claim that he honestly and reasonably believed he was immune from prosecution pursuant to section 11367 constitutes a valid defense to the action.

■ " 'At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense . . . .' " (*Matter of Application of Ahart* (1916) 172 Cal. 762, 765 [159 P. 160].) ■ "The primordial concept of *mens rea,* the guilty mind, expresses the principle that it is not conduct alone but conduct accompanied by certain specific mental states which concerns, or should concern, the law. In a broad sense the concept may be said to relate to such important doctrines as justification, excuse, mistake, necessity and mental capacity, but in the final analysis it means simply that there must be a 'joint operation of act and intent,' as expressed in section 20 of the Penal Code." (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 532 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].) As Penal Code section 26 explains: "All persons are capable of committing crimes except those belonging to the following classes: . . . [¶] Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

Judicial application of this doctrine has most often occurred in relation to statutes defining offenses in part by the age of the victim. In *People* v. *Hernandez, supra,* 61 Cal.2d 529, the Supreme Court held that a reasonable and good faith belief that the complaining witness was over 18 years of age is a defense to statutory rape. (Pen. Code, § 261.5.) The rationale of *Hernandez* has been followed in similar situations. In *People* v. *Atchison* (1978) 22 Cal.3d 181 [148 Cal.Rptr. 881, 583 P.2d 735] it was held that reasonable mistake as to age is a defense to charges of molesting a minor (Pen. Code, § 647a) and contributing to the delinquency of a minor (Pen. Code, § 272). *People* v. *Peterson* (1981) 126 Cal.App.3d 396 [178 Cal.Rptr. 734] held that such a defense is applicable to a charge of oral copulation with a person less than 18 years of age (Pen. Code, § 288a, subd. (b)(1)); and *People* v.

*Goldstein* (1982) 130 Cal.App.3d 1024 [182 Cal.Rptr. 207] recognized the defense in a case involving inducement of a minor to use a narcotic drug. (§ 11353.)[3]

Mistake of fact has also been asserted in connection with factors other than the age of the victim. (Pen. Code, § 281.) In *People* v. *Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850], the Supreme Court held that a good faith belief in the termination of a prior marriage was a defense to bigamy. In *People* v. *Navarro* (1979) 99 Cal.App.3d Supp. 1 [160 Cal.Rptr. 692], it was held that a good faith belief in the legal right to the subject property was a defense to the charge of theft. (Pen. Code, § 487, subd. 1.) Finally, in *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], the Supreme Court held that a reasonable, good faith belief that the complaining witness had voluntarily consented to accompany the defendant, and to engage in sexual intercourse with him, is a defense to the charges of forcible rape (Pen. Code, § 261, subds. (2) & (3)) and kidnapping (Pen. Code, § 207). (*Id.,* at p. 155; see also the resulting CALJIC instruction, No. 10.23.)

We have found only one case addressing the issue of mistake of fact in relation to immunity pursuant to section 11367. In *People* v. *Jones* (1962) 200 Cal.App.2d 805 [19 Cal.Rptr. 787], the defendant was arrested in November 1960 for selling a substance in lieu of heroin to an undercover officer. Though there was no evidence the defendant acted as an informant during the five months prior to his arrest, there was evidence he had worked as a police informant in 1958-1959, and once in June of 1960. The trial court refused a requested instruction that defendant was immune from prosecution if he reasonably believed he was working under the immediate direction of a police officer. The Court of Appeal affirmed, reasoning that the defendant's personal belief was not relevant since the "deranged mind of a narcotic addict" could not be trusted as the standard for reasonableness. (*Id.,* at p. 813.) ■ We find the analysis in *Jones* unpersuasive because the question of reasonableness must be resolved on the basis of an objective standard. The issue is not whether it was reasonable for a narcotic addict with a "deranged mind" to believe he or she was immune from prosecution; but rather whether in the context presented an ordinary person could have a bona fide and reasonable belief in his or her immunity from prosecution. In addition, *Jones* is factually distinguishable. ■ Here, appellant's claim was corroborated to a large extent by Officer Delacerda, whereas in *Jones* the defendant offered no evidence supporting his belief in immunity.

---

[3] In *People* v. *Olsen* (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52], however, the Supreme Court held that the mistake of age defense was *not* applicable to the charge of lewd and lascivious conduct with a minor under 14 years of age. (Pen. Code, § 288, subd. (a).) The court distinguished *Hernandez* and its progeny by reasoning that the considerations that justified the defense were outweighed by the strong public policy of protecting children of tender years. (*Id.,* at p. 649.)

We find that if appellant harbored a reasonable and good faith belief that his actions shielded him from prosecution pursuant to section 11367, such belief constituted a valid defense to the charge against him. We emphasize that appellant would need to convince the jury both that he honestly acted as an informant, and that his belief in immunity was reasonable under the circumstances.

█ It is well settled that "a defendant has a constitutional right to have the jury determine every material issue presented by the evidence . . . ." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1].) █ A trial court must instruct on general principles of law whether or not a request has been made; this duty encompasses the obligation to instruct on defenses.[4] (*People* v. *Sedeno, supra,* at p. 716.) █ It is reversible error to refuse to instruct on a defense where substantial evidence so warrants. (*People* v. *Flannel, supra,* 25 Cal.3d 668, 684-685; *People* v. *Mayberry, supra,* 15 Cal.3d 143, 151; *People* v. *Carmen* (1951) 36 Cal.2d 768, 773-774 [228 P.2d 281].)

█ Though the jury was not required to believe it, the defense in this case presented substantial evidence supporting defendant's claim that he had a reasonable and good faith belief he was immune from prosecution: the defendant testified that he had been working as an informant at the time of the arrest, that he believed he was immune from prosecution, and that he was not arranging for the drugs to be brought into the jail for his personal use, but in order to facilitate the arrest of Donna Marcinowsky and thereby obtain Officer Delacerda's assistance in connection with charges pending against him. In addition, Officer Delacerda corroborated much of appellant's story, including the fact that Delacerda generally required an informant's assistance in three arrests—one more than defendant had then provided—before providing assistance with the district attorney. █ Considering this evidence, we find that it was error for the trial court to refuse the requested instruction.

Such error cannot be cured by weighing the evidence and finding it reasonably probable that a correctly instructed jury nevertheless would have convicted the defendant of the charge. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 720; *People* v. *Mayberry, supra,* 15 Cal.3d 143, 157-158; *People* v. *Anderson* (1983) 144 Cal.App.3d 55, 62-63 [192 Cal.Rptr. 409].) Rather, reversal is required where "the factual question posed by the omitted

---

[4] We note that the trial court has a duty not only to give requested instructions on applicable defenses upon which the defendant relies, but that a sua sponte duty also exists. Arguably, the trial court here would have had the duty to give a mistake of fact instruction whether or not appellant had requested one. (See CALJIC No. 4.35.)

instruction was not necessarily resolved adversely to defendant under other, properly given instructions . . . ." (*People* v. *Edwards* (1985) 39 Cal.3d 107, 116-117 [216 Cal.Rptr. 397, 702 P.2d 555].) Because the jury was not instructed that appellant's claim was a defense to the charge, the error was prejudicial.

Accordingly, the judgment is reversed.

Benson, J., and McCarty, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.